(No. 88-CV-0348—

*In re* APPLICATION OF ROGER COOK

*Opinion filed May 3, 1989.*
*Order filed February 26, 1990.*
*Opinion filed October 20, 1992.*

ROGER COOK, *pro se*, for Claimant.

RICHARD F. PLACHTA, for Methodist Hospital.

NEIL F. HARTIGAN and ROLAND W. BURRIS, Attorneys General (JAMES A. TYSON, JR., JAMES MAHER III, and ANDREW LEVINE, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

Burke, J.

This claim arises out of an incident that occurred on May 28, 1988. Roger Cook, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. Ill. Rev. Stat. 1987, ch. 70, par. 71 *et seq.*

This Court has carefully considered the application for benefits submitted on October 9, 1988, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That the Claimant, Roger Cook, age 33, was a victim of a violent crime as defined in section 72(c) of the Act, to wit, aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4).

2. That on May 28, 1988, the Claimant was stabbed, allegedly by an offender who was known to him. The incident occurred at 4701 North Clark Street, Chicago, Illinois. Police investigation revealed that after the Claimant left a tavern, the alleged offender approached him from behind, produced a knife and stabbed the Claimant several times. The Claimant was taken to Bethany Methodist Hospital for treatment of his injuries. The alleged offender has been apprehended and charged with aggravated battery. The criminal proceedings against him are currently pending.

3. That the Claimant seeks compensation for loss of earnings and medical/hospital expenses.

4. That the Claimant has submitted medical/hospital

expenses in the amount of $21,025.55, none of which was paid by insurance, leaving a balance of $21,025.55. To date, the Claimant has paid nothing towards this balance.

5. That section 72(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of the injury or on $1,000 per month, whichever is less.

6. That the Claimant was employed by Morrison-Knudsen Company, Inc., prior to the injury and his average monthly earnings were $1,080.30. Claimant was disabled and unable to work from May 28, 1988, to January 16, 1989, for a period of 7 months and 12 working days.

7. That based on $1,000 per month, the maximum compensation for loss of earnings for 7 months and 12 working days is $7,545.40.

8. That the Claimant has complied with all pertinent provisions of the Act and qualifies for compensation thereunder.

9. That pursuant to section 80.1(e) of the Act, this Court must deduct from all claims the amount of benefits, payments or awards payable under the Workers' Compensation Act, Dramshop Act, Federal Medicare, State Public Aid, Federal Social Security Administration burial benefits, Veterans Administration burial benefits, health insurance, or from any other source, except annuities, pension plans, Federal Social Security payments payable to dependents of the victim and the net proceeds of the first $25,000 of life insurance that would inure to the benefit of the applicant.

10. That the Claimant has received no reimbursements that can be counted as an applicable deduction.

11. That the Claimant has indicated that a civil action may be filed as a result of the incident. The Claimant, by informing the Attorney General's Office of the possibility of a civil action, has acknowledged his responsibility to further notify the Attorney General of the filing of the civil action and of its final disposition, pursuant to section 87 of the Act.

12. That pursuant to section 88(c) of the Act, the Court may order that all or a portion of an award be paid jointly to the applicant and provider of services. In the instant case, the Court finds this section applicable and orders that joint payment be made.

13. That after making all the applicable deductions under the Act, the pecuniary loss resulting from the Claimant's injuries is in excess of $25,000, the maximum amount allowed in section 80.1(f) of the Act.

14. That the Claimant is entitled to an award in the amount of $25,000 which is prorated as follows:

| | Compensable Amount | % of Loss | Total Award |
|---|---|---|---|
| Compensable Loss of Earnings | $7,545.40 | 26.4% | $6,600.00 |
| Methodist Hospital of Chicago | 20,335.55 | 71.2% | 17,800.00 |
| Kirit R. Joshi, M.D. | 690.00 | 2.4% | 600.00 |
| Total | $28,570.95 | 100.0% | $25,000.00 |

It is hereby ordered that the sum of $6,600 be and is hereby awarded to Roger Cook, an innocent victim of a violent crime.

It is further ordered that the sum of $17,800 be and is hereby awarded to Roger Cook and Methodist Hospital of Chicago.

It is further ordered that the sum of $600 be and is hereby awarded to Roger Cook and Kirit R. Joshi, M.D.

## ORDER

PATCHETT, J.

This cause comes on to be heard on the motion of Methodist Hospital of Chicago, a co-payee of a portion of a previously granted award herein, and the Court being advised;

On May 3, 1989, an award was made in this claim, a portion of which, $17,800, was made co-payable to the applicant and Methodist Hospital of Chicago. On October 23, 1989, Methodist Hospital of Chicago filed a motion seeking to have the payment made to it directly.

Section 18(a) of the Crime Victims Compensation Act provides that an award is not subject to enforcement, attachment, garnishment, or other process, except that an award is not exempt from the claim of a creditor to the extent that he or she provided products, services, or accommodations, the costs of which are included in the award. Methodist Hospital of Chicago is a creditor who has provided medical services, the costs of which were a portion of the award. Records in the clerk's office indicate that the warrant previously issued to the co-payees has not been cashed.

But for certain allegations in the motion by Methodist Hospital of Chicago, the circumstances would suffice for us to order direct payment. In its motion the hospital noted the availability of health insurance coverage for Claimant which would potentially cover at least a portion of the expenses incurred. An applicant does not have an option to collect under the Act or an insurance program. Any health insurance coverage available must be de-

ducted from an award pursuant to section 10.1(e) of the Act, regardless of whether an applicant chooses not to use it. The investigatory report made no mention of available insurance coverage.

It is hereby ordered that the clerk's office take necessary steps to stop the payment on the warrant at issue here and, if possible, any of the other warrants issued in payment of the previously made award; it is also ordered that the office of the Attorney General further investigate this matter and that it be assigned to a commissioner for the purpose of conducting a hearing. Methodist Hospital of Chicago is to be given notice of and an opportunity to participate in the hearing.

## OPINION

PATCHETT, J.

This case was initially before the Court on Claimant's application for compensation pursuant to the provisions of the Crime Victims Compensation Act, hereinafter referred to as the Act. (Ill. Rev. Stat. 1989, ch. 70, par. 71 *et seq.*) On May 3, 1989, the Court, in reliance upon the Attorney General's report, issued an opinion awarding $25,000, which was prorated as follows:

a.  $ 6,600.00  to Roger Cook for loss of earnings;

b.  17,800.00  to Roger Cook *and* Methodist Hospital; and

c.  600.00  to Roger Cook and Kirit R. Joshi, M.D.

$25,000.00  Total Award

On February 26, 1990, the Court issued an order directing the Clerk of the Court to stop payment on the

$17,800 warrant, directing the Attorney General to further investigate this matter, and assigning this cause to a commissioner. A hearing was conducted by a commissioner on September 20, 1991, without Roger Cook in attendance. Three attempts were made to notify Roger Cook of proposed pretrials and the hearing. All three notices were returned by the U.S. Postal Service with notations that no forwarding address was available for Cook. Prior to the presentation of this report, a fourth attempt to reach Roger Cook was unsuccessful.

Roger Cook has not filed a notice of current address with the Clerk of the Court. The only witness present at the September 20, 1991, hearing was Richard Plachta from Masters Collectors on behalf of Methodist Hospital of Chicago.

On October 23, 1989, Methodist Hospital of Chicago filed a motion for substitution of payee, seeking to have the $17,800 sum made payable directly to it. A warrant had been issued payable jointly to Claimant and to the hospital. According to the hospital, Roger Cook offered to endorse the warrant on the condition that the hospital agree to refund $3,800 to him. The hospital's bills totalled $20,335.55 and the hospital did not agree to the arrangement. Roger Cook did not endorse the warrant and it was subsequently cancelled.

The hospital stated that Claimant was initially hospitalized on May 28, 1988, and released on June 6, 1988. He was hospitalized again on June 7 and released June 16, 1988. The hospital stated that Roger Cook's health insurance coverage was terminated on May 31, 1988, and he did not provide accident data relating to his hospitalization to his insurance carrier. According to the hospital, Cook gave incorrect third-party insurance billing informa-

tion. Therefore, none of the hospital expenses were paid by insurance. Roger Cook's Crime Victim Compensation application shows that he indicated that no private accident or health plan was available to cover the medical bills.

On January 24, 1991, the hospital filed a notice of hospital lien against Cook's claim. At the hearing, Richard Plachta stated that he believed the total of all bills owed the hospital from Roger Cook because of treatment of services arising out of the incident is $20,223.00 (*sic*). The Court previously found, based upon the Attorney General's report, the sum to be $20,335.55.

An employee of the hospital, Delores Smith, appeared at a pretrial on January 22, 1991. The Assistant Attorney General stated that he and Ms. Smith agreed that the sum of $6,854.25 was the amount that would have been paid by insurance. The record does not, other than the representations of the Assistant Attorney General and the facts stated in the hospital's motion, indicate whether insurance coverage was in place and to what extent the policy would cover Cook's medical expenses. There is reference in the hospital's motion and in the comments by the Assistant Attorney General that insurance would have covered only three days, May 28 to May 31, 1988. The Attorney General does not object to the motion.

The Assistant Attorney General stated that the sum of $6,854.25 should be deducted from the $17,800, thereby leaving the sum of $10,945.75 due the hospital. At the conclusion of the September 20, 1991, hearing, Mr. Plachta indicated that the hospital would agree to receiving $10,945.75.

Roger Cook has not communicated with the Court, the Clerk of the Court, a commissioner, the Attorney

General or the hospital since the date he attempted to obtain the refund from the hospital from the sums included in the $17,800 warrant.

In light of Claimant's lack of cooperation since the initial opinion of April 4, 1989, the Court could rule that Claimant has failed to substantiate, or otherwise proceed with, his claim and deny the balance of the claim pending. The Claimant may have misrepresented facts, may have decided not to file a claim with an insurance carrier, and may have tried to convince the hospital to compromise its claim against him by sharing some of the proceeds due it. Because Roger Cook chooses not to participate further in the processing of his claim, we will rely upon the representations and recommendations of the Assistant Attorney General and grant the motion to substitute payees.

Further, we rely on the representations of the Assistant Attorney General regarding the sums purported to be potentially reimbursable from insurance. We therefore find that the sum of $6,854.25 is the sum that would have been reimbursable from insurance.

The Court previously determined the total of all compensable expenses was $28,570.95 but prorated the award. In the event $6,854.25 is deducted from $28,570.95, the total of all compensable damages is less than the maximum award permitted by the Act. In this event such deduction is made, there is no need to order a *pro rata* distribution to the hospital.

The Court therefore deducts the sum of $6,854.25 from the total hospital bill of $20,335.55, and therefore awards $13,481.30 directly to the hospital.